UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ROBERT D. WOOD and
JOHNNIE J. WOOD,

    Plaintiffs,

v.                                             Case No. 8:09-cv-6-T-30MAP

PASCO COUNTY, FLORIDA,

    Defendant.
_____/

## ORDER

THIS CAUSE comes before the Court upon Defendant's Dispositive Motion to Dismiss for Failure to State Valid Claims for Relief and Incorporated Memorandum of Law (Dkt. 9) and Plaintiffs' Response to same (Dkt. 10). The Court, having reviewed the motion, response, and being otherwise advised on the premises, finds that Defendant's Dispositive Motion to Dismiss for Failure to State Valid Claims for Relief and Incorporated Memorandum of Law (Dkt. 9) should be granted.

## BACKGROUND

On January 5, 2009, *pro se* Plaintiffs Robert D. Wood and Johnnie J. Wood (collectively "Plaintiffs") filed a five-count complaint against Defendant Pasco County, Florida ("Defendant" or "Pasco County"). The complaint alleges the following claims against Defendant: (1) violation of Article 1, Section 10 of the U.S. Constitution ("the Contracts Clause"); (2) violation of the Due Process Clause of the Fourteenth Amendment

to the U.S. Constitution; (3) violation of the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution; (4) violation of the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution; and (5) violation of the Takings Clause of the Fifth Amendment to the U.S. Constitution.

The claims relate to Defendant's revocation on July 8, 2008, of a conditional use permit (hereinafter referred to as "CUP") previously granted to Plaintiffs for the operation of a motorcycle dirt race track. The CUP was approved on November 8, 2006 and was subject to a number of conditions. (Dkt. 7; Exhibit C). The conditions were deemed necessary to protect the "health, safety, or welfare of the public and/or necessary" to assure compliance with the standards as set forth in the Pasco County Land Development Code. Id.

After receiving numerous complaints about Plaintiffs' motorcycle dirt race track, Plaintiffs were notified that the conditional use would be reviewed and possibly revoked upon review. Id. On July 8, 2008, Plaintiffs attended a public hearing on the review of the conditional use and had the opportunity to speak and offer evidence. After hearing from Plaintiffs and members of the community, the Board of County Commissioners of Pasco County, Florida (the "Board") concluded that: the use of the motorcycle track constituted an annoyance to the community; the use of the motorcycle track adversely affected or contributed to the deterioration of quality of life or property values in the immediate neighborhood; Plaintiffs failed to abide by the conditions of the conditional use; the use of the motorcycle track was not in conformance with the standards established by the county;

and promotion of the public health, safety, or general welfare would be served by revocation of the conditional use. Id. The Board subsequently voted to revoke Plaintiffs' CUP.

## DISCUSSION

### I. Motion to Dismiss Standard

Determining the propriety of granting a motion to dismiss requires courts to accept all the factual allegations in the complaint as true and evaluate all inferences derived from those facts in the light most favorable to the plaintiff. See Hunnings v. Texaco, Inc., 29 F.3d 1480, 1483 (11th Cir. 1994). Nonetheless, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." Davila v. Delta Air Lines, Inc., 326 F.3d 1183, 1185 (11th Cir. 2003). To survive a motion to dismiss, a plaintiff's complaint must include "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1960 (2007). While in the ordinary case a plaintiff may find the bar exceedingly low to plead only more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action," it is clear that "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 1959, 1965; see also Davis v. Coca-Cola Bottling Co. Consol., 516 F.3d 955, 974, n.43 (11th Cir. 2008) (noting the abrogation of the "no set of facts" standard and holding Twombly "as a further articulation of the standard by which to evaluate the sufficiency of all claims"). Absent the necessary factual allegations,

"unadorned, the-defendant-unlawfully-harmed-me accusation[s]" will not suffice. Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).

## II.   Count I of Plaintiffs' Complaint

Count I of the complaint claims that Defendant's revocation of the CUP constituted a violation of the Contracts Clause. Defendant's motion to dismiss argues, in part, that the CUP is not a contract and thus, Count I is subject to dismissal.

The Contracts Clause prohibits states from passing "any ... Law impairing the Obligation of Contracts." U.S. Const. art. 1, § 10. The Contracts Clause routinely has been applied to contracts between states and private parties. The Supreme Court devised a three-part test to analyze alleged impairments of contracts. See General Motors Corp. v. Romein, 503 U.S. 181, 186 (1992). First, the court must inquire whether a contract exists. If a contract exists, the court must inquire whether the law in question impairs an obligation under the contract. If those first two elements are met, the court must inquire whether the discerned impairment can fairly be characterized as substantial. In an appropriate case, the court also must include an inquiry as to whether the impairment is reasonable and necessary to fulfill an important public purpose. See Energy Reserves Group v. Kansas Power & Light, 459 U.S. 400, 411-12 (1983).

As to the first element, the Supreme Court makes it clear that absent some clear indication that a legislature intends to bind itself contractually, the presumption is that "a law is not intended to create private contractual or vested rights but merely declares a policy to be pursued until the legislature shall ordain otherwise." National R.R. Passenger Corp. v.

Atchison Topeka and Santa Fe Ry. Co., 470 U.S. 451, 465-66 (1985). In National R.R. Passenger Corp., the Supreme Court noted:

> This well-established presumption is grounded in the elementary proposition that the principal function of a legislature is not to make contracts, but to make laws that establish the policy of the state. Policies, unlike contracts, are inherently subject to revision and repeal, and to construe laws as contracts when the obligation is not clearly and unequivocally expressed would be to limit drastically the essential powers of a legislative body. Indeed, '[t]he continued existence of a government would be of no great value, if by implications and presumptions, it was disarmed of the powers necessary to accomplish the ends of its creation.' Thus, the party asserting the creation of a contract must overcome this well-founded presumption, and we proceed cautiously both in identifying a contract within the language of a regulatory statute and in defining the contours of any contractual obligation.

Id. at 466 (internal citations omitted).

Plaintiffs seem to rely on an "Interoffice Memorandum," attached as Exhibit A to the complaint to assert that it is a contract and/or license from Defendant to Plaintiffs. The Interoffice Memorandum is clearly not a contract between the parties, but rather an administrative document that formally communicates whether Defendant should approve Plaintiffs' variance request and preliminary site plan for the motorcycle track. Even assuming that Plaintiffs mean to claim that the CUP is a contract and/or license from Defendant, the exhibits to Plaintiffs' complaint demonstrate that the CUP was merely a conditional use permit, subject to numerous conditions, and subject to revocation if Plaintiffs failed to abide by those conditions. There is nothing indicating that Defendant intended for the CUP to be a binding contract between the parties. See 219 South Atlantic Blvd. Inc. v. City of Ft. Lauderdale, Fla., 239 F. Supp. 2d 1265, 1272-73 (S.D. Fla. 2002) (holding that city's approval of application for a specific zoning designation was not a contract, especially

when the city reserved the right to discontinue the designation if a number of conditions were not met); Lindsay v. City of Philadelphia, 844 F. Supp. 229, 235 (E.D. Pa. 1994) (plaintiff's vending license with city was not a contract when city did not evince any intent to be legally obligated and ordinance specifically reserved the city's right to prohibit certain sidewalk vending); Kennedy v. Hughes, 596 F. Supp. 1487, 1495 (D.C. Del. 1984) (holding that absent clear, unequivocal language to the contrary, an ordinary business license is not considered to be a contract between a government and private parties).

Accordingly, taking the allegations of Plaintiffs' complaint to be the truth, they are insufficient to establish that a contract existed between Defendant and Plaintiffs. A CUP is simply not a contract subject to protection under the Contracts Clause. Thus, Count I must be dismissed with prejudice.

### III.    Counts II and III of Plaintiffs' Complaint

Counts II and III of Plaintiffs' complaint claim that Defendant violated the Due Process Clause of the Fourteenth Amendment when Defendant failed to issue notice or warnings pursuant to the Pasco County Code of Ordinances and revoked the CUP without having the "official code enforcement officer" appear at the public hearing.

Defendant first argues that Plaintiffs cannot claim substantive due process protection in Counts II or III because deprivations of state created land use rights cannot support a substantive due process claim. The law is clear that land use rights are state-created rights that are not afforded substantive due process protection. See Greenbriar Village v. Mountain Brook, 345 F.3d 1258, 1263 (11th Cir. 2003); DeKalb Stone, Inc. v. County of DeKalb, Ga.,

106 F.3d 956, 959 (11th Cir. 1997); McKinney v. Pate, 20 F.3d 1550, 1559 (11th Cir. 1994); Henniger v. Pinellas County, 7 F. Supp. 2d 1334, 1339 (M.D. Fla. 1998). Accordingly, Counts II and III are denied with prejudice to the extent that they claim a violation of Plaintiffs' substantive due process rights.

Defendant also argues that Plaintiffs cannot claim procedural due process protection in Counts II or III. In support of that argument, Defendant contends, in part, that the claims must fail because the Fourteenth Amendment only protects a plaintiff against deprivations "without due process of law," and a procedural due process violation is not complete unless and until the state fails to provide due process.

The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides, in relevant part, that no state may "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, §1. In procedural due process claims, the deprivation by state action of a constitutionally protected interest in "life, liberty, or property" is not in itself unconstitutional. See generally McKinney, 20 F.3d at 1550. What is unconstitutional is the deprivation of such an interest without due process of law. Id. Thus, the constitutional violation is not complete unless and until the state fails to provide due process. Id. In other words, "the state must have the opportunity to remedy the procedural failings of its subdivisions and agencies in the appropriate fora-agencies, review boards, and state courts before being subjected to a claim alleging a procedural due process violation." Cotton v. Jackson, 216 F.3d 1328, 1331 (11th Cir. 2000) (internal citations and quotation omitted). Accordingly, if adequate state remedies were available, but a plaintiff

...

did not avail herself of them, that plaintiff "cannot rely on that failure to claim that the state deprived [her] of procedural due process." Id. To be considered "adequate," "the state procedure must be able to correct whatever deficiencies exist and to provide plaintiff with whatever process is due." Id.

Here, Plaintiffs failed to allege that state remedies were inadequate. Accordingly, Counts II and III must be dismissed without prejudice.

**IV.  Count IV of Plaintiffs' Complaint**

Count IV of Plaintiffs' complaint claims that Defendant violated the Equal Protection Clause of the Fourteenth Amendment. In support of this claim, Plaintiffs reference a separate motorcycle track that is "grandfathered," and located less than a 1/4 mile from schools and apartment buildings. Defendant argues that Count IV fails to state a claim because Plaintiffs fail to allege that they were treated differently from similarly situated persons and that the difference in treatment was rendered in order to intentionally discriminate against them.

Count IV lacks any allegations that Defendant intentionally discriminated against Plaintiffs. See Executive 100, Inc. v. Martin County, 922 F.2d 1536 (11th Cir. 1991). Although Count IV does vaguely suggest that another motorcycle track, located in a residential area, is in use with Defendant's approval, there is no mention that this amounts to discrimination against Plaintiffs. Accordingly, Count IV is dismissed without prejudice and Plaintiffs shall have twenty (20) days to amend Count IV to include sufficient allegations.

## V. Count V of Plaintiffs' Complaint

Count V of the complaint alleges that Defendant's revocation of the CUP amounted to an unlawful taking in violation of the Fifth Amendment. Defendant argues, in part, that the claim is not ripe because Plaintiffs failed to exhaust the procedure for compensation in state court.

In order to assert a claim under the Takings Clause:

> the property owner must allege either that the state law provides him no process for obtaining just compensation (such as an action for inverse condemnation) or that the state law appears to provide such process, but due to state court interpretation, the process is inadequate. If the property owner makes either allegation, then his Fifth Amendment takings claim is ripe. If, on the other hand, he makes neither allegation (and cannot do so because the state law affords an adequate process for obtaining just compensation), his Fifth Amendment takings claim is not ripe. If such a claim is pending in federal district court, the district court must dismiss it for lack of subject matter jurisdiction since the owner has failed to establish an Article III 'case or controversy.' See Reahard v. Lee County, 30 F.3d 1412, 1417 (11th Cir.1994) ("It follows that '[a]s a practical matter, Williamson precludes litigation of the merits of a just compensation claim in federal court unless the state declines to provide adequate procedures through which an aggrieved party might seek compensation.'") (quoting New Port Largo, Inc. v. Monroe County, 985 F.2d 1488, 1496 (11th Cir.1993) (Tjoflat, C.J., specially concurring)).

In this case, Plaintiffs fail to allege that they exhausted procedures for compensation in state court. Accordingly, Count V is not ripe and must be dismissed without prejudice.

## **CONCLUSION**

For the reasons set forth herein, it is hereby ORDERED and ADJUDGED that:

1. Defendant's Dispositive Motion to Dismiss for Failure to State Valid Claims for Relief and Incorporated Memorandum of Law (Dkt. 9) is **GRANTED**.

2. Count I of Plaintiffs' complaint is dismissed with prejudice.

3. Counts II and III of Plaintiffs' complaint are dismissed without prejudice for Plaintiffs to exhaust their remedies in state court.

4. Count IV of Plaintiffs' complaint is dismissed without prejudice. Plaintiffs shall have twenty (20) days to amend this claim.

5. Count V of Plaintiffs' complaint is dismissed without prejudice for Plaintiffs to exhaust their remedies in state court.

**DONE** and **ORDERED** in Tampa, Florida on July 8, 2009.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Even\2009\09-cv-6.mtdismiss.frm